# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Tammy Morse,

                              Plaintiff,

                                                    Civ. No. 10-2865 (RHK/JJG)
                                                    **MEMORANDUM OPINION
                                                    AND ORDER**

v.

Walgreens Company,

                              Defendant.

Neil G. Clemmer, Gary L. Manka, Katz, Manka, Teplinsky, Graves & Sobol, Ltd., Minneapolis, Minnesota, for Plaintiff.

Eric J. Steinhoff, Brian A. Wood, Amy E. Thompson, William L. Davidson, Lind, Jensen, Sullivan & Peterson, PA, Minneapolis, Minnesota, for Defendant.

        In this negligence action, Plaintiff Tammy Morse has sued Defendant Walgreens Company ("Walgreens"), the well-known pharmacy chain, for injuries sustained when she slipped on ice outside its Apple Valley, Minnesota store.   Walgreens now moves for summary judgment.   For the reasons that follow, the Court will grant its Motion.[1]

## BACKGROUND

        The relevant facts are undisputed.   Morse has lived in Minnesota since at least 1981.   (Morse Dep. at 22-23, 54-55.)   Around 10:00 a.m. on January 31, 2009, Morse's

---

[1] Walgreens also moves to preclude Morse's expert from testifying at trial, pursuant to Daubert v. Merrill Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), and Federal Rule of Evidence 702. Because the Court concludes that summary judgment is appropriate, it need not (and does not) reach this portion of Walgreens' Motion.

sister, Robin Dreyer, picked her up from her home and drove to the International House of Pancakes in Apple Valley for breakfast.   (Id. at 65-69; Dreyer Dep. at 11-13.)   It was a "beautiful" January day, with the sun shining and temperatures above freezing, melting some of the accumulated winter snow.   (Morse Dep. at 65; Dreyer Dep. at 10.)   After dining for approximately an hour, the two traveled to the Walgreens store on Pilot Knob Road in Apple Valley to shop for makeup.   (Morse Dep. at 70-72.)

At the Walgreens parking lot, Morse and Dreyer exited Dreyer's vehicle and walked into the store.   (Id. at 78.)   Neither could recall in her deposition if the area in front of the store's doors was wet or icy when they entered.   (Id. at 79-80; Dreyer Dep. at 21.)   They shopped for approximately 15 to 30 minutes, purchased some makeup, and then left the store.   (Morse Dep. at 84-86; Dreyer Dep. at 23-24.)

As she exited, Morse slipped on the sidewalk approximately two to three feet in front of the store's doors and fell to the ground, injuring her left arm and shoulder. (Morse Dep. at 88-90 & Ex. 1.)[2]   When she came to a rest, she saw ice on the ground all around her; although in her deposition she could not recall exactly how far the ice extended, she estimated that a one-inch thick patch approximately six to eight feet wide covered the "entire area" in front of the doorway.   (Id. at 90-91, 99 & Ex. 1.)   She also stated that "she believe[d] [it] to be true" that the "full [door]way was filled with ice." (Id. at 95.)   Dreyer confirmed that a "pretty large area" of "wet, thick" ice was in "the whole general area" in front of the doorway.   (Dreyer Dep. at 27-28.)   Each testified

---

[2] Exhibit 1 to Morse's deposition is a photograph of the front of the store, on which Morse marked the area where she fell and the extent of the ice on the ground.

that the ice was clearly visible, although Morse did not see it until after she fell.   (Morse Dep. at 99; Dreyer Dep. at 27, 29.)[3]

While on the ground, Morse noted that she fell in an area directly under an awning over the doorway.   She observed that snow was melting on the awning, causing water to "pour[] down" onto the ground in the area where she had slipped.   (Morse Dep. at 91.) She retained an engineering expert, Donn Peterson, who has opined that the awning artificially allowed the accumulation of ice in front of the doorway, which led to her fall.

On June 8, 2010, Morse commenced the instant action against Walgreens in the Dakota County, Minnesota District Court, asserting that its negligence caused her injuries; Walgreens later removed the action to this Court.   With discovery complete, Walgreens now moves for summary judgment.[4]

---

[3] Morse submitted an errata sheet with her deposition transcript in which she changed some of her testimony.   In particular, she changed certain testimony to indicate that she (i) did not assess the extent of the ice on the ground after she fell and (ii) could not see where the ice started or ended.   Walgreens objects to these changes and argues that they cannot create a genuine issue of fact (see Reply Mem. at 3), but the Federal Rules of Civil Procedure expressly permit a witness to change her testimony following review of a deposition transcript.   See Fed. R. Civ. P. 30(e)(1) (deponent "must be allowed 30 days . . . to review the transcript . . . and [make] changes in form or *substance*") (emphasis added).   Regardless, Morse did *not* alter her testimony that there was "no question" the ice was visible (Morse Dep. at 99) and that the "full entryway" was covered with ice (id. at 95).

[4] As noted above, Walgreens also seeks to preclude Peterson (Morse's expert) from testifying at trial.   Although the Court need not (and does not) reach that issue here, it has serious doubts whether it would have permitted Peterson to testify had this case proceeded to trial.   Peterson has opined that snow melting on the awning above the doorway re-froze on the ground in the area where Morse slipped.   (See Thompson Aff. Ex. 4 at 8.)   Such testimony would not be helpful to a jury, which can easily understand the concepts of melting and freezing water.   See, e.g., Fed. R. Evid. 702 (admissibility of expert opinion turns on whether it "will assist the trier of fact to understand the evidence or to determine a fact in issue"); United States v. Kime, 99 F.3d 870, 884 (8th Cir. 1996) ("[W]hen the layman juror would be able to make a common sense determination of the issue without the technical aid of . . . an expert, the expert testimony should be excluded as superfluous."); Tousignant v. St. Louis Cnty., 615 N.W.2d 53, 59 (Minn. 2000)

## STANDARD OF DECISION

Summary judgment is proper if, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).   The moving party bears the burden of showing that the material facts in the case are undisputed.   Id. at 322; Whisenhunt v. Sw. Bell Tel., 573 F.3d 565, 568 (8th Cir. 2009).   The Court must view the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to the nonmoving party. Weitz Co., LLC v. Lloyd's of London, 574 F.3d 885, 892 (8th Cir. 2009); Carraher v. Target Corp., 503 F.3d 714, 716 (8th Cir. 2007).   The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue of material fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Wingate v. Gage Cnty. Sch. Dist., No. 34, 528 F.3d 1074, 1078-79 (8th Cir. 2008).

## ANALYSIS

Under Minnesota law,[5] a plaintiff alleging negligence must prove:   (1) the defendant owed the plaintiff a duty; (2) the defendant breached that duty; (3) the breach proximately caused harm to the plaintiff; and (4) damages.   E.g., Gilbertson v. Leininger,

---

("[W]hen [facts are] within the common knowledge of a lay person, expert testimony . . . is not necessary.").

[5] Neither party suggests that any other state's law applies in this case.   See BBSerCo, Inc. v. Metrix Co., 324 F.3d 955, 960 n.3 (8th Cir. 2003) (law of forum state applies by default where parties do not raise choice-of-law issue).

599 N.W.2d 127, 130 (Minn. 1999).   A defendant "is entitled to summary judgment when the record reflects a complete lack of proof on any of the four essential elements of the claim."   Gradjelick v. Hance, 646 N.W.2d 225, 230 (Minn. 2002).   Here, Walgreens seeks summary judgment on several grounds, but the Court need focus on only one: the lack of a duty owed to Morse.

"Any legal analysis of an action . . . alleging negligence must begin with an inquiry into whether the [defendant] owed the [plaintiff] a duty."   Louis v. Louis, 636 N.W.2d 314, 318 (Minn. 2001).   If no duty exists, a court need not reach the remaining elements of a negligence claim.   Baber v. Dill, 531 N.W.2d 493, 495 (Minn. 1995). "[T]he existence of a legal duty [typically] is an issue for the court to determine as a matter of law."   Louis, 636 N.W.2d at 318.

Walgreens owed Morse a duty to protect her from foreseeably dangerous conditions on its premises, save for "obvious" ones.   E.g., Baber, 531 N.W.2d at 495-96 (quoting Restatement (Second) of Torts § 343A (1965) ("A possessor of land is not liable to his invitee for physical harm caused to [her] by any activity or condition on the land whose danger is known or obvious to [her].")).   The "obvious danger" exception, however, is a qualified one:   "even for obvious dangers, a [landowner] has a duty . . . if harm to an invitee should be anticipated despite the obviousness of the danger."   Id. at 496; accord Louis, 636 N.W.2d at 319.   Yet, "this duty is not absolute."   Baber, 531 N.W.2d at 496.   "A possessor of land . . . has no duty to an invitee when the anticipated harm involves dangers *so obvious* that no warning is necessary."   Id. (emphasis added). The rationale for this rule is that "no one needs notice of what he knows or reasonably

may be expected to know."   Id. (quoting Sowles v. Urschel Labs., Inc., 595 F.2d 1361,

1365 (8th Cir. 1979)).

Minnesota courts have struggled to apply these "fine" distinctions.   Id.   As one

court has aptly stated:

> A cynic might suggest that our cases imply that where the danger is *really*
> obvious, there is no landowner duty, but where the danger is really, *really*
> obvious, there is a duty, yet, where the danger is really, really, *really*
> obvious, there is again no duty.   Our appellate decisions have not clearly
> explained the difference between a danger that is so obvious that the
> landowner must warn against the likely injury despite the obvious danger
> and a danger that is a bit more obvious such that the entrant now needs no
> warning.

Davis v. Walter, No. A06-457, 2007 WL 3577, at *4 (Minn. Ct. App. Jan. 2, 2007).

Nevertheless, the Minnesota Supreme Court has "cho[sen] to make" the "fine" distinction

between obvious conditions "for which the possessor should anticipate harm" and those

"for which the possessor should not anticipate harm because they are *so* open and

obvious."   Baber, 531 N.W.2d at 496 (emphasis added).

The dispositive question here is whether the large, visible patch of ice was "so

obviously" dangerous that Walgreens owed no duty to warn or protect Morse from it.   In

the Court's view, this question must be answered in the affirmative.   It can hardly be

doubted that a reasonable person in Morse's shoes, a longtime resident of Minnesota,

would appreciate the danger inherent in walking across a large icy area.   See Louis, 636

N.W.2d at 321 ("[A] condition is not 'obvious' unless both the condition and the risk are

apparent to and would be recognized by a reasonable man 'in the position of the visitor,

exercising ordinary perception, intelligence and judgment.'") (citation omitted).   It

makes no difference that Morse did not see the ice until after she fell – "the question is not whether the injured party actually saw the danger, but whether it was in fact *visible*." Id. (emphasis added).   Here, it is undisputed that the ice where Morse slipped was visible, and the prevailing conditions – sunny and clear, around noon – did not otherwise obscure it.[6]

The Court finds this case on all fours with the Minnesota Court of Appeals' recent decision in Duncanson v. Biaggi's, Inc., No. A10-1786, 2011 WL 2623386 (Minn. Ct. App. July 5, 2011).   There, the plaintiff, a lifelong resident of the upper Midwest, slipped on a three-foot-wide patch of ice in the defendant's parking lot.   She claimed that she did not see the ice until after she fell.   The day in question was a "big drip day," sunny with temperatures in the upper 20s, causing significant melting of snow.   Id. at *1.   The district court dismissed the plaintiff's negligence claim after concluding that the ice patch was an open and obvious condition for which the defendant owed the plaintiff no duty, and the Minnesota Court of Appeals affirmed.   Id. at *2-3.   The Court perceives no principled reason to depart from Duncanson here.   See also Larson v. United States, Civ. No. 01-1580, 2005 WL 1691363, at *5 (D. Minn. Apr. 14, 2005) (Doty, J.) (concluding that plaintiff who slipped on a visible ice patch could not recover, as the "danger was open and obvious"); Parr v. Hamnes, 228 N.W.2d 234, 238 (Minn. 1975) (noting, while

---

[6] Morse attempts to confuse the issue by arguing that the icy area was near where she *came to rest*, and "not necessarily where her slip initiated."   (Mem. in Opp'n at 6.)   Hence, she contends that "[t]here is no evidence in the record to support a conclusion that the exact area in which her slip began" was covered with ice.   (Id.)   Both Morse and Dreyer, however, testified that the *entire doorway area* was covered in ice.   (Morse Dep. at 95 & Ex. 1; Dreyer Dep. at 27-28.)   Moreover, Morse contradicts her own assertion later in her brief, arguing that her "injury [was] caused by wet ice directly in front of [the] store exit."   (Mem. in Opp'n at 7.)

analyzing assumption of risk, that "the slipperiness of ice" is an "obvious" danger);

Munoz v. Applebaum's Food Mkt., Inc., 196 N.W.2d 921, 921-22 (Minn. 1972) (*per*

*curiam*) (no duty to plaintiff injured after slipping on 20-foot-wide pool of 1/4-inch deep

water); Frazer v. Soo Line R.R. Co., No. C1-97-1599, 1998 WL 101341, at *3 (Minn. Ct.

App. Mar. 10, 1998) (no duty to plaintiff who, during daylight, slipped on path that was

"hard packed with snow and ice," as plaintiff could see path's condition).[7]

To be sure, courts applying Minnesota law have reached different conclusions

whether the visible accumulation of ice presents an "open and obvious" danger for which

a landowner owes a duty (or no duty) to those who might traverse it.   Compare, e.g.,

Duncanson, 2011 WL 2623386, at *2-3 (no duty because ice patch was open and obvious

as a matter of law), and Frazer, 1998 WL 101341, at *3 (same), with Gearin v. Wal-Mart

Stores, Inc., 53 F.3d 216, 217 (8th Cir. 1995) (*per curiam*) (applying Minnesota law)

(rejecting argument that ice patch was open and obvious as matter of law), and Schaeffer

v. Restaurant Co., No. PI 02-1670, 2003 WL 23413048, at *2 (Minn. Dist. Ct. Nov. 25,

2003) (same).[8]   The same is true outside Minnesota.   Compare, e.g., Wolfley v.

_____

[7] Whether a condition is open and obvious "can be determined by a district court" as a matter of
law.   Twetten v. Am. Legion Post 212, No. A08-0552, 2009 WL 113378, at *2 (Minn. Ct. App.
Jan. 20, 2009); accord, e.g., Louis, 636 N.W.2d at 321 ("[T]he district court must determine if
the activity or condition involved known or obvious dangers."); Rau v. Leininger, No. A08-2126,
2009 WL 2928099, at *2-3 (Minn. Ct. App. Sept. 15, 2009).   This is consistent with the
principle that "[g]enerally, the existence of a legal duty is an issue for the court to determine as a
matter of law."   Larson v. Larson, 373 N.W.2d 287, 289 (Minn. 1985).

[8] The Court does not believe Gearin controls the outcome here, as subsequent decisions of the
Minnesota Supreme Court (in Louis and Baber) discussed the distinction between "obvious"
hazards requiring a warning and those "so obvious" that none is necessary.   (Admittedly, Baber
was decided approximately two weeks *before* Gearin, but there is no mention of Baber in that

Solectron USA, Inc., 541 F.3d 819, 826 (8th Cir. 2008) (applying North Carolina law);

Kellermann v. Car City Chevrolet-Nissan, Inc., 713 N.E.2d 1285, 1289 (Ill. App. Ct.

1999); and Sidle v. Humphrey, 233 N.E.2d 589, 592 (Ohio 1968) ("The danger from ice

and snow is an obvious danger and an occupier of premises should expect that an invitee

on his premises will discover and realize that danger and protect himself against it."),

with Morgan v. Genrich, 659 N.Y.S.2d 638, 639 (N.Y. App. Div. 1997) (Mem.) (fact that

"icy conditions were readily observable" did not "negate the duty of defendants to keep

their premises reasonably safe"); Hellmann v. Droege's Super Mkt., Inc., 943 S.W.2d

655, 658-59 (Mo. Ct. App. 1997); and Hanson v. Town & Country Shopping Ctr., Inc.,

144 N.W.2d 870, 875-76 (Iowa 1966).   In the undersigned's view, the better rule, and

the one that the Minnesota Supreme Court would follow under the facts of this case, is

that "the danger from ice and snow . . . [was] an obvious one" for which Walgreens owed

Morse no duty.   62A Am. Jur. 2d Premises Liability § 656 (2005); accord, e.g.,

Konovsky v. Kraus-Anderson, Inc., 237 N.W.2d 630, 633 (Minn. 1976) ("We assume

that a dangerous condition created by ice is or, by the exercise of ordinary care, should be

noticeable in the absence of special circumstances.").[9]

---

opinion.)   In any event, this Court's "role in diversity cases is to interpret state law," Kingman v.
Dillard's, Inc., 643 F.3d 607, 615 (8th Cir. 2011), and Gearin does not – and cannot – establish
Minnesota law on negligence.   See Homolla v. Gluck, 248 F.2d 731, 734 (8th Cir. 1957) ("This
Court is not an appellate court of the State of Missouri and establishes no rules of law for that
State.").

[9] Morse relies upon Peterson v. W.T. Rawleigh Co., 144 N.W.2d 555 (Minn. 1966), in support of
her claim, but that case is distinguishable.   There, the elderly plaintiff slipped on ice in the
defendant's parking lot while delivering "order blanks" to the defendant in the course of his
employment.   Id. at 495-96.   Peterson held that the plaintiff's negligence claim should proceed
to a jury because "defendant should have foreseen that its elderly distributors would come to the

The Court need proceed no further.   Because, in the Court's view, Walgreens owed no duty to Morse, it cannot be liable for negligence as a matter of law. Accordingly, its Motion for Summary Judgment must be granted.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that Walgreens' Motion for Summary Judgment and to Exclude Expert Testimony (Doc. No. 20) is **GRANTED IN PART** and Morse's Complaint (attached to Doc. No. 1) is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Dated: August 8, 2011                                       s/Richard H. Kyle
                                                            RICHARD H. KYLE
                                                            United States District Judge

---

loading dock for its products and attempt to negotiate the area between the dock and the entryway despite the slippery conditions."   Id. at 497.   As the Minnesota Supreme Court subsequently noted while discussing Peterson, there were "compelling reasons for salesmen [like the plaintiff] to attempt to traverse the [icy] area," namely, because their "livelihood was involved."   Jensen v. Allied Cent. Stores, Inc., 167 N.W.2d 739, 741 (Minn. 1969).   There are no similarly "compelling reasons" here – indeed, in contrast to Peterson, Morse was purchasing makeup.